UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY J. POZNANSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 1199 |
| v. ) | |
| ) | Judge John W. Darrah |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Stanley J. Poznanski, filed an application for Disability Insurance Benefits on October 21, 2002, alleging he was disabled beginning on June 28, 2002, due to foot numbness, carpal tunnel syndrome, and dizziness. Plaintiff's application and his subsequent request for reconsideration were denied. Plaintiff filed a Request for Hearing; and on March 11, 2004, a hearing was held before Administrative Law Judge (ALJ) Daniel Dadabo. Plaintiff, plaintiff's son, and a vocational expert, Grace Gianforte, testified at the hearing. On July 21, 2004, ALJ Dadabo denied Plaintiff's disability application.

Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council, which was denied. In February 2005, Plaintiff filed a Complaint, requesting review of the final determination pursuant to 42 U.S.C. § 405(g). Pending before this Court are cross-motions for summary judgment and Plaintiff's alternate Motion to Remand.

## BACKGROUND

Plaintiff was 55 years of age at the time of the ALJ's decision. He has a ninth grade education. His past work experience included an apartment maintenance janitor, handicapped teacher, and press cleaner. Plaintiff ceased working on June 28, 2002, due to his position being replaced with computerized machinery. Plaintiff was given an opportunity at another position but did not stay employed because of stress. Plaintiff collected unemployment and looked for employment as a janitor, without success. Plaintiff also identifies June 28, 2002 as the date of his inability to work as a result of numbness of feet, carpal tunnel syndrome, and dizziness.

On November 18, 2002, Plaintiff was examined by Dr. Samiullah M. Choudry. Doctor Choudry found Plaintiff had very poor hygiene and a sad effect, but he was orientated to person, place, and time. Plaintiff informed Dr. Choudry that he had attempted suicide, but he was no longer suicidal. Plaintiff's strength in his arms and legs, his grip strength, and Tinnell's test were normal. A Phalen's test was minimally positive at one minute with onset of numbness in his hands. His neurological condition was normal; and he showed no signs of muscle atrophy, spasm, or sensory loss. His gait was normal, without assistant devices. Plaintiff did not have difficulty with comprehending, manual dexterity, memory, or relating to others. Doctor Choudry diagnosed Plaintiff with: (1) major depression, (2) suicidal ideation with a prior attempt, (3) post-traumatic stress syndrome, (4) arthritis, (5) carpal tunnel syndrome, (6) macula-papular rash of unknown etiology, (7) generalized alopecia of unknown etiology, and (8) possible thyroid disease.

On December 31, 2002, Plaintiff was examined by a psychiatrist, Dr. Marek Walczyk. Plaintiff was poorly groomed, disheveled looking, and had poor hygiene. Plaintiff was able to understand the exam questions, and his speech was coherent. Plaintiff was alert, orientated, and had

normal memory. Plaintiff did not have any major mental illness. Plaintiff was diagnosed with post-traumatic stress syndrome, stemming from his service in Vietnam during the 1970s, and possible alcohol abuse. Plaintiff's global assessment functioning ("GAF") score was 48.

On January 24, 2003, a state agency psychologist, John Tomassetti, PhD., reviewed Plaintiff's medical records. Doctor Tomassetti found that Plaintiff's impairments were not severe and that he had a 12.06 "B" category of anxiety-related disorders that was stable without medication or treatment. Plaintiff had mild to no limitations in the "B" criteria of the listings. On January 28, 2003, a state agency physician, Dr. Barry D. Free, reviewed Plaintiff's records and opined that Plaintiff was capable of medium work with additional restrictions against more occasional fine manipulation.

Plaintiff received treatment at the Joliet Veteran's Clinic and Hines Veteran's Administration Hospital ("VA Hospital") from May 2003 to February 2004. In May 2003, Plaintiff went to the VA Hospital because he was "feeling very down." Plaintiff reported a depressed mood after drinking alcohol. A psychiatrist at the VA Hospital, Dr. Zita Samuel, found Plaintiff to be orientated, cooperative and pleasant, had a comfortable mood, and had no suicidal ideation. Plaintiff was diagnosed with adjustment and mood disorder.

In May 2003, Plaintiff was admitted to St. Joseph Medical Center for two days because of complaints of chest pain and alcohol intoxication. Plaintiff denied feeling depressed or suicidal. Plaintiff complained of falling frequently and dizziness when getting out of bed. The internist believed Plaintiff fell secondary to alcoholism and that while Plaintiff showed hypothyroidism, the internist did not recommend treatment with a thyroid supplement at that time. Tests showed normal cardiac function, no aortic stenosis or insufficiency, no mitral stenosis, mild mitral regurgitation, and

no significant tricuspid or pulmonic insufficiency. Plaintiff's reflexes were reduced on both sides equally in the lower extremities, and he had abnormal liver enzymes, cholesterol, and triglycerides.

In June 2003, Plaintiff exhibited trace pedal edema and weak pulses, which were attributed to hypothyroidism. Plaintiff took medication for the thyroid condition and was put on a plan of preventative health maintenance.

In August 2003, Plaintiff began substance abuse treatment with a psychiatrist, Dr. Thomas Benton. Doctor Benton diagnosed Plaintiff as having major depression with a "fair" prognosis. Doctor Benton found that Plaintiff's pain or other symptoms were severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks. He opined that Plaintiff could walk one city block without rest or severe pain; he could sit for less than two hours in an eight-hour work day; he could stand for less than two hours in an eight-hour work day; Plaintiff needed a job which permits shifting positions at will from sitting, standing or walking; he frequently needed to take unscheduled breaks during an eight-hour work day; he should rarely lift and carry less than ten pounds; he could occasionally look down, turn his head from left to right, look up, and hold his head in a static position; he should never twist or stoop; he could occasionally crouch and climb stairs; he should rarely climb ladders; and he had significant limitations in doing repetitive reaching, handling or fingering. Doctor Benton prescribed Sertraline for depression, Olanzapine for sleep, and thiamine/Vitamin B for alcohol abuse. In September 2003, Plaintiff told Dr. Benton that he had not abused alcohol since June 2003. In October 2003, Dr. Benton noted that Plaintiff was doing well and renewed Plaintiff's prescriptions.

In January 2004, Plaintiff underwent testing because he had complained of difficulties with balance, daily living activities, and deconditioning. The tests included screening for thyroid levels.

4

Plaintiff's test results were normal and did not merit referral for further testing. Plaintiff's thyroid was not enlarged and was free of nodules. He was diagnosed as "well, not acutely sick." In February 2004, Plaintiff told Dr. Benton that he had stopped taking his psychotropic medications but agreed to retry them. Doctor Benton prescribed Trazadone as a sleep aid.

In June 2004, a neurologist, Dr. Julian Freeman, reviewed Plaintiff's medical records. Doctor Freeman diagnosed Plaintiff with severe hypothyroidism, a psychiatric disorder of "multifactorial" origin, and carpal tunnel syndrome. Doctor Freeman concluded that "[s]ustained activity above the level of sedentary work would not be possible for this individual. There is good medical basis in the hypothyroidism itself to marked limitations in intellectual function, independent of any effects of alcoholism or any other psychiatric disorder." He found Dr. Benton's RFC of 48 to be the only RFC that had any realistic medical basis except that it may have over-evaluated the possible level of finger and wrist motion.

In March 2004, an administrative hearing on Plaintiff's claim was held. Plaintiff testified that he saw his psychiatrist sometimes every month and sometimes every two months. He was once hospitalized for a suicide attempt. He did not believe he could work because he gets short-winded, loses the grip in his hand, he gets dizzy, and his toes become numb. On an average day, he does a little cleaning and cooking. He sits down and relaxes because he gets dizzy. He estimated that he could walk for 15 to 20 minutes before needing to sit down. He also did not carry anything "really heavy" because he loses his grip and becomes short of breath.

Plaintiff's son testified that he was twenty-eight-years-old and lived with his father. He takes care of the house everyday and works a little on weekends. He believed that his father had a great deal of stress, had high blood pressure, and had carpal tunnel syndrome.

Gianforte, the vocational expert, also testified at the administrative hearing. Gianforte classified Plaintiff's previous employment as semi-skilled and medium in exertion. Gianforte opined that an individual with the restrictions and capabilities as set forth by Dr. Benton would be precluded from unskilled work, such as a car detailer or a building cleaner.

On July 21, 2004, the ALJ ruled that Plaintiff was "not disabled," finding that Plaintiff remains able to perform his past work as an apartment building property maintenance worker both as he performed it and as it is performed nationally.[1]

## ANALYSIS

An ALJ's findings constitute the final decision of the Commissioner of the Social Security Administration if the Appeals Council finds no basis for further review. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (*Smith*). Under such circumstances, the decision of the ALJ is the decision reviewed by the district court. *Ears v. Secretary of the Dept. of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). In this review, the district court examines the entire record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000) (*Powers*). The ALJ's decision will not be reversed if it is supported by substantial evidence, which is evidence " a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Powers*, 207 F.3d at 434.

---

[1] The ALJ's relevant specific findings are discussed in the analysis of each of Plaintiff's arguments.

The determination of whether a claimant suffers from a disability as defined in the Social Security Act is conducted through a five-step inquiry, evaluated in sequence:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App.1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir 1995).

A negative answer to any of the inquiries, other than step 3, ends the inquiry and leads to the determination that the claimant is not disabled. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (*Clifford*). The claimant has the burden of proof for steps 1 through 4. The Commissioner has the burden of proof for step 5. *Clifford*, 227 F.3d at 868.

Plaintiff argues that the ALJ improperly discounted the treating physician's, Dr. Benton's opinion, in favor of the non-examining state agency physician's opinion.

In the instant case, the ALJ relied upon the opinion of the non-examining state agency medical consultant, rejecting the Plaintiff's treating physician's opinion, to conclude that Plaintiff did not have an impairment or combination of impairments that met the severity criteria of any the criteria. The ALJ found that Dr. Benton's March 11, 2004 functional assessment, which purported to find no ability for even sedentary exertion, merited "only limited weight." The ALJ's identified reasons for giving little weight to Dr. Benton's opinion included: (1) Dr. Benton only saw Plaintiff six times in six months for brief clinical interviews that did not involve actual examinations; (2) Dr. Benton was not present when Plaintiff was at his "May 2003 low point" and did not begin treating Plaintiff until three months after the "low point"; (3) Dr. Benton's progress notes were "strikingly non-revealing in their brevity"; (4) Dr. Benton's level of care was minimal, if entirely

7

conservative; and (5) Dr. Benton's emphasis on physical symptoms and his willingness to expound on physical restrictions beyond his expertise.

An ALJ must articulate reasons for accepting or rejecting certain evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (*Herron*). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). A treating physician's opinion regarding the severity and nature of a medical condition is entitled to controlling weight if it is well supported by medical findings and is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (*Gudgel*). An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; the contradictory opinion of a non-examining physician, by itself, does not suffice. *See Gudgel*, 345 F.3d at 470.

Here, the ALJ did articulate reasons for rejecting Dr. Benton's opinion, but the reasons are not supported by substantial evidence. The ALJ discounted the number of times and the length of those times that Dr. Benton treated Plaintiff. However, the ALJ fails to support discounting Dr. Benton's opinion because of "only" six consultations and the adoption of the state agency physician's opinion who never examined Plaintiff and relied upon the review of two consultative examinations to form his opinion.

The ALJ also found Dr. Benton's progress notes and level care to be minimal. However, Dr. Benton appears to be the only physician to treat Plaintiff on an extended basis; and the records demonstrate that while in Dr. Benton's care, Plaintiff had numerous diagnostic tests completed, was hospitalized for testing, and was prescribed multiple medications for varying medical conditions. Furthermore, while Dr. Benton was not present when Plaintiff was admitted in May 2003 for suicidal

ideation, the records indicate that Dr. Benton did consult with Plaintiff shortly after he was admitted. Lastly, the ALJ discounts Dr. Benton's opinions beyond his area of expertise. However, Dr. Benton is a psychiatrist with a medical degree; and his opinion was supported by the medical records.

Based on the above, the rejection of Dr. Benton's opinion and reliance of the non-examining physician's opinion was not supported by substantial evidence. This finding alone is sufficient for this Court to vacate and remand. However, Plaintiff's remaining arguments are addressed because they are likely to be relevant in subsequent proceedings before the Social Security Administration.

Plaintiff argues that the ALJ erroneously found that Plaintiff did not meet a Listing of Impairments ("Listing"). The Listing describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from engaging in any gainful activity. 20 C.F.R. § 404.1525(a)

The ALJ found that Plaintiff met the "A" criteria of the Listing due to his history of depression and post-traumatic stress disorder. The ALJ found that Plaintiff did not meet the "B" criteria because he was assessed as having "mild" difficulties with daily activities, "mild" difficulties in maintaining social functioning, and "mild" deficiencies of concentration, persistence or pace. The ALJ also found that Plaintiff had not met the "C" criteria as evidenced by his GAF of 55 assigned by Dr. Samuel.

The ALJ relied upon the expert opinion of the non-examining state agency medical consultant in making the above assessment. The expert's opinion relied upon by the ALJ was markedly different than Dr. Benton's assessment, which the ALJ afforded little, if any, weight. However, as discussed above, the ALJ's rejection of Dr. Benton's assessment was not supported by

9

substantial evidence. Had the ALJ taken Dr. Benton's assessment into consideration, the ALJ may have come to a different finding as to whether Plaintiff met a Listing.

Plaintiff also argues that the ALJ erroneously found that he could perform medium work, including his past relevant work as an apartment building property maintenance worker. In making this determination, the ALJ relied upon the state agency consultants who had determined that Plaintiff retained the residual functional capacity to perform a restricted range of medium work and the vocational expert's testimony of hypotheticals, assuming that Plaintiff could perform a restricted range of medium work. These findings, while supported by the state agency consultants and the vocational expert's testimony assuming the ability to perform a restricted range of medium work, failed to take into account Dr. Benton's assessment, which found that Plaintiff could not perform medium work. As stated above, had the ALJ taken Dr. Benton's assessment into consideration, the ALJ may have come to a different conclusion as to Plaintiff's residual functioning capacity and ability to perform his past relevant work.

Plaintiff also argues that the ALJ unreasonably gave less weight to Dr. Freeman's opinion. The ALJ gave little weight to Dr. Freeman's opinion, finding that his opinions were inconsistent with other substantial evidence and were not supported by the record. The ALJ also noted that Dr. Freeman was a paid witness in over 2,500 disability proceedings, questioning his impartiality.

Plaintiff takes issue with these opinions and the reasons therefore and identifies parts of the record that contradict the ALJ's conclusion. However, the articulated reasons given by the ALJ for discounting Dr. Freeman's opinion are also supported by substantial evidence in the record. Although there was substantial evidence that supported Dr. Freeman's opinions, there was also substantial evidence that was inconsistent with Dr. Freeman's opinions. For example, Dr. Freeman

diagnosed Plaintiff with "severe hypothyroidism." Plaintiff was diagnosed by several doctors with hypothyroidism and had symptoms consistent with that diagnosis. However, several doctors also found that Plaintiff's hypothyroidism was minimal and that with proper medication, Plaintiff's hypothyroidism was successfully treated and would not constitute "severe" hypothyroidism. In essence, Plaintiff seeks that this Court reweigh the evidence, resolve the conflicts differently, and decide questions of credibility – which the Court cannot do. *See Powers*, 207 F.3d at 434-35. The ALJ's articulated reasons for giving little weight to Dr. Freeman's opinions were supported by substantial evidence and did not constitute error.

## CONCLUSION

For the reasons stated above, Plaintiff's and Defendant's Motions for Summary Judgment are denied. Plaintiff's alternate Motion to Remand is granted. The decision of the Administrative Law Judge is vacated, and this proceeding is remanded for further proceedings consistent with this opinion.

Dated: October 5, 2005

JOHN W. DARRAH
United States District Judge